9 F.3d 1545
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Vaughn PRESTON, Defendant-Appellant.
 No. 92-5682.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: October 12, 1993.
Decided: November 9, 1993.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Jackson L. Kiser, Chief District Judge. (CR-92-43-R)
 Irvin Ray Byrd, Jr., Salem, Virginia, for Appellant.
 E. Montgomery Tucker, United States Attorney, Joseph W. H. Mott, Assistant United States Attorney, Roanoke, Virginia, for Appellees.
 W.D.Va.
 AFFIRMED.
 Before PHILLIPS, NIEMEYER, and HAMILTON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Vaughn Preston appeals from his jury convictions of aiding and abetting the making of a false statement to obtain a firearm, 18 U.S.C.A. § 922(a)(6) (West Supp. 1993), possession of cocaine with intent to distribute, 21 U.S.C. § 841(a) (1988), and using or carrying a firearm in relation to a drug trafficking offense, 18 U.S.C.A. § 924(c) (West Supp. 1993). Preston was sentenced to sixty months imprisonment on the false statement conviction, sixty-three months imprisonment (to run concurrently) on the possession of cocaine conviction, and sixty months imprisonment (to run consecutively to his other sentences) on the firearm conviction. He was also sentenced to five years of supervised release and fined $5000. Preston noted a timely appeal.
 
 
 2
 Testimony at trial disclosed that Preston entered a gun store in February 1992 with two other men, Kimbro and Walker; the men looked at several handguns and decided to buy two. Though they did not buy the guns that day, the men's actions aroused the suspicion of the owner of the store, who contacted a special agent of the Bureau of Alcohol, Tobacco and Firearms ("McCampbell").
 
 
 3
 McCampbell testified that the store owner informed him that though Preston and Kimbro were more particularly interested in the guns, Walker completed the forms for a criminal record check. Walker called the store owner the following day and informed him that he would return to the store that afternoon. The store owner called McCampbell, who then went to the store to observe the transaction. McCampbell observed Preston handling the two guns and asking questions about them. Walker paid for the gun with cash from Preston and Kimbro.
 
 
 4
 Agents of the Bureau of Alcohol, Tobacco and Firearms followed Walker, Preston, and Kimbro as they left in Walker's car and traveled to various locations, which included a motel, a restaurant, a K-Mart, and a Pawn Shop. Walker was driving the vehicle at all times. The ATF agent stated that Preston had no "ownership or personal interest" in the vehicle. The group eventually returned to the gun store, and Walker purchased some ammunition there.
 
 
 5
 The group then left the store and were soon stopped by county police at McCampbell's request. Walker was advised of his Miranda[1] rights and was interviewed by ATF agents in an ATF vehicle. In the course of the interview, the ATF agent ascertained that Walker had agreed to be a "straw purchaser" of the guns for Kimbro and Preston. Preston was to pay Walker $100 for purchasing the guns. Preston and Kimbro remained in Walker's vehicle during Walker's interview. The agent acknowledged that none of the men were under arrest when the vehicle was stopped.
 
 
 6
 McCampbell then returned to Walker's vehicle and asked Preston and Kimbro to get out of the car; when they did so, they were arrested. McCampbell then searched the vehicle. He could not recall if Walker consented to the search. In the front seat of the vehicle, the officer found a handgun and ammunition. The officer found another handgun and ammunition in the back seat.
 
 
 7
 Another officer searched Kimbro and Preston incident to their arrest. He found a key with the number 301 on Kimbro and "a plastic baggie containing a white chunk substance" on Preston. Other officers went to a Super 8 motel, where Walker, Kimbro, and Preston had stopped earlier in the day. They went to room number 301, but no one responded to their knock on the door. The officers spoke with the motel desk clerk and a regional manager of the motel chain and explained the circumstances of the arrest of Walker, Kimbro, and Preston. The room was registered in the name of Michelle Preston and was paid for in cash daily by Anthony Porter. They then went to the regional manager who was in charge of that particular motel, who consented to a search of room 301. The regional managers stated to the officers that "as far as they were concerned ... the lease had been voided" because of their concern for the safety of other guests. The officers proceeded to the room with the two regional managers, and, after receiving no response, entered the room with a key.
 
 
 8
 In their search of the room, the officers found razor blades and some powder residue in a night stand and a gym bag containing over $1300 in currency. The officers found three bags of cocaine base under one of the beds; the total quantity was later determined to be 30.3 grams.
 
 
 9
 The attorneys and the court discussed a motion to suppress evidence obtained from the search of Walker's car and from the search of the motel room at length. The court denied both motions. The court found that the stop of Walker's car was a proper Terry[2] stop supported by reasonable suspicion. As for the search of the motel room, the court found the officers reasonably believed that they had proper consent to search the room.
 
 
 10
 Preston asserts that the court improperly denied his motion to suppress evidence obtained in the search of Walker's car in which he was a passenger. The burden is on the defendant to prove that he has a reasonable expectation of privacy that was infringed when the police conducted a challenged search. Rakas v. Illinois, 439 U.S. 128, 134 (1984). The lower court's determination as to whether a reasonable expectation of privacy exists is a legal conclusion involving substantive Fourth Amendment analysis and is subject to full review on appeal. United States v. Ramapuram, 632 F.2d 1149, 1155 (4th Cir. 1980), cert. denied, 450 U.S. 1030 (1981). The court's factual findings underlying the legal conclusions are subject to the clearly erroneous standard of review. Id.
 
 
 11
 Passengers in a car driven by the owner at the time of its search do not have a legitimate expectation of privacy in the car such that they could raise a Fourth Amendment challenge to a search of the car's interior. Rakas, 439 U.S. at 148-49. Even though Preston alleges that he paid Walker to transport him, he was still only a passenger in Walker's vehicle; therefore, he had no legitimate expectation of privacy in the car. Thus, the court properly denied Preston's motion to suppress the guns that the officers found in the search of the car.
 
 
 12
 The district court concluded that the officers' stop of Walker's car "was permissible under the circumstances." The court found that, once alerted by the gun store owner, the officers observed suspicious activity surrounding the purchase of two firearms; this factual finding is not clearly erroneous. Thus, since the police had reasonable suspicion that the vehicle or its occupants were involved in a violation of the law, their stop of the vehicle was proper. Delaware v. Prouse, 440 U.S. 648, 663 (1979). Since their interview with Walker disclosed that the three men were involved in the illegal purchase of firearms, the officers then had probable cause to arrest Kimbro and Preston and to search them incident to that arrest. Police may conduct a full search of an arrestee's person after a valid custodial arrest, regardless of the nature of the offense. United States v. Robinson, 414 U.S. 218, 235 (1973). Thus, the district court's denial of Preston's motion to suppress the cocaine found on his person was proper.[3]
 
 
 13
 Preston asserts that the district court erred when it denied his motion to suppress evidence obtained in the search of his motel room since there was no evidence that he consented to the search. The Supreme Court has held that a hotel guest is entitled to the constitutional protection against unreasonable searches and seizures and that the warrantless search of an unoccupied hotel room based only on the consent of the hotel proprietor is unconstitutional. Stoner v. California, 376 U.S. 483, 489-90 (1964). A warrantless entry is valid, however, if based upon the consent of a third party whom police reasonably believe has authority over the premises, but who does not. Illinois v. Rodriguez, 497 U.S. 177, 185-89 (1990); see also United States v. Kinney, 953 F.2d 863, 866-67 (4th Cir.), cert. denied, 60 U.S.L.W. 3842 (U.S. 1992). The determination of consent to enter must be judged against an objective standard, whether the facts available to the officer warrant a man of reasonable caution in the belief that the consenting party had authority over the premises. Rodriguez, 497 U.S. at 188.
 
 
 14
 Preston testified that he was staying in the motel room in question and that he paid for the room each night in cash. He testified on crossexamination, however, that he gave the officers different information when he was arrested. Preston testified that he gave the officers his address and that he did not volunteer that he was staying at the motel because the officers did not ask him. He acknowledged that he told them that he did not know who was staying at the motel and that Kimbro told them that the motel key belonged to a friend. Thus, as far as the police officers knew, Preston had no possessory interest or expectation of privacy in the motel room.
 
 
 15
 When the officers arrived at the motel and determined that the room was unoccupied, they did not enter the room with the key. They sought permission to enter the room from the hotel manager. Thus, even if Preston had a reasonable expectation of privacy in the room, and even if the officers did not have proper consent to enter the room under Stoner, we find that they did have a reasonable belief that they had appropriate consent to search the room. Therefore, the search of the room was valid under Rodriguez and Kinney.
 
 
 16
 Preston alleges that the evidence was insufficient to support his conviction of using or carrying a firearm in relation to a drug trafficking crime in violation of 18 U.S.C.A. § 924(c) (West Supp. 1993). A verdict must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it. Glasser v. United States, 315 U.S. 60, 80 (1942). In order to convict Preston of violating section 924(c), the government must establish beyond a reasonable doubt that he carried a firearm and that the firearm had some relation or connection to the underlying crime. United States v. Brockington, 849 F.2d 872, 876 (4th Cir. 1988). It is enough that the firearm is present for protection and to facilitate the likelihood of success, whether or not it was actually used. Id.
 
 
 17
 When construed in the light most favorable to the government, there was ample evidence presented to support Preston's firearm conviction. Evidence disclosed that Preston acquired his firearm for protection against a perceived threat and that he loaded the gun and put it in its holster while he was riding in the car. Preston removed the gun when police stopped the car. The police then found crack cocaine in Preston's pocket when they arrested him.
 
 
 18
 Preston alleges that the court erred at his sentencing hearing when it attributed to him 30.8 grams of cocaine that the police found in the motel room. He asserts that because the conspiracy count was dismissed, he should be held accountable only for the amount of cocaine found on his person. Determinations regarding the quantity of a drug considered as relevant conduct for sentencing purposes are factual and are subject to the clearly erroneous standard of review. United States v. Williams, 977 F.2d 866, 869 (4th Cir. 1992), cert. denied, 61 U.S.L.W. 3583 (1993). Drug quantities in dismissed counts may be considered in computing a base offense level if they are part of the same course of conduct as the count of conviction. United States Sentencing Commission, Guidelines Manual, § 1B1.3(a)(1) (Nov. 1992). To establish constructive possession of the drugs, the government must show ownership, dominion, or control over the contraband itself or the premises in which it was concealed. United States v. Blue, 957 F.2d 106, 107 (4th Cir. 1992).
 
 
 19
 Preston admitted that he stayed in the motel room and paid for the room in cash. Police found the cocaine in three plastic bags under a bed; Preston allegedly slept in a different bed. In addition, police found razor blades with a powdery residue in a nightstand and over $1300 in currency. Though Kimbro had the only outstanding key to the room, Preston testified that several other individuals were in the room at various times. Police also found some of Preston's personal effects in the room. The court overruled Preston's objections to the quantity calculation and determined a preponderance of the evidence supported it. Construing the evidence in the light most favorable to the government, we find that the court's determination was not clearly erroneous.
 
 
 20
 Preston asserts that the court erred in admitting evidence of phone calls made from the motel room to New York because the evidence was more prejudicial than probative. The government asserted that it offered the evidence to establish that the occupants of the motel room were from New York and thus ineligible to buy handguns in Virginia. The government also noted that expert testimony established that cocaine was cheaper in New York, and the jury could thus infer that the Defendants came to Roanoke to sell cocaine at higher prices.
 
 
 21
 Appraisal of the probative and prejudicial value of evidence is entrusted to the sound discretion of the trial court and its appraisal, absent extraordinary circumstances, will not be disturbed. United States v. Simpson, 910 F.2d 154, 156-57 (4th Cir. 1990). We find that there are no "extraordinary circumstances" concerning the admission of this evidence and that the trial court did not abuse its discretion in admitting it.
 
 
 22
 Preston asserts that the court improperly admitted hearsay testimony when it permitted Walker to testify concerning a conversation he overheard between Kimbro and Preston and an unidentified woman. Walker stated that the woman was "doing some dealing for them" and that she told them that someone was looking for them with a gun and was "ready to do something" to them. Walker continued that they then asked her "about how was sales going and things like that in the Brittany Apartment area." We find that since the statement was made in the furtherance of a conspiracy, the statements are not hearsay under Fed. R. Evid. 801(d)(2)(E). A preponderance of the evidence, including the statement itself, establishes that the Defendants and the declarant were involved in a conspiracy to distribute drugs and the statements were made in furtherance of that conspiracy. See United States v. Blevins, 960 F.2d 1252, 1255 (4th Cir. 1992).
 
 
 23
 For these reasons, we affirm Preston's convictions and sentences. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 Miranda v. Arizona, 384 U.S. 436 (1966)
 
 
 [2]
 Terry v. Ohio, 392 U.S. 1 (1968)
 
 
 [3]
 Preston lacks standing to contest admission of the motel room key as evidence since the key was found in the search of Kimbro. Fourth Amendment rights are personal and may not be vicariously asserted. Rakas, 439 U.S. at 133-34