UNITED STATES of America, Appellee,

v.

Richard TORCH, Appellant.

No. 77–2299.

United States Court of Appeals,
Fourth Circuit.

Argued Aug. 20, 1979.

Decided Nov. 23, 1979.

Burton W. Sandler, Baltimore, Md., for appellant.

James S. Arnold, Asst. U.S. Atty., Charleston, W.Va. (Robert B. King, U.S. Atty., Charleston, W.Va., on brief), for appellee.

Before BUTZNER, HALL and PHILLIPS, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Richard A. Torch appeals his conviction under 18 U.S.C. § 1465 for transporting obscene materials in interstate commerce for the purpose of sale. Torch was convicted on five counts, one for each of five films found by a jury to be obscene. On appeal he assigns Fourth Amendment and other errors. We affirm.

Torch was employed as a salesman by Majestic News Company. Located in Pittsburgh, Pennsylvania, Majestic was engaged in the business of supplying sexually explicit materials to retail outlets. One such outlet was Kip's Discount in Charleston, West Virginia. On February 11, 1977, Torch telephoned the owner of Kip's Discount, Clifford J. Holdren, Jr., to discuss possible purchases from Majestic. Telephone records show that the call was made from the Majestic warehouse in Pittsburgh. Holdren expressed an interest in purchasing a film entitled "Dog Fucker."

On February 15, 1977, Torch appeared at Kip's Discount and delivered two cardboard cartons to Holdren. Holdren paid Torch for the purchase by check, and Torch prepared an invoice reflecting the sale. Shortly after Torch left, Holdren allowed a special agent of the Federal Bureau of Investigation, Robert Sylvester, to examine the contents of the cartons. The cartons contained sexually explicit magazines and films, including the film "Dog Fucker."

With Holdren's consent, Sylvester took copies of these magazines and films to a federal magistrate. The magistrate viewed certain of the magazines and films and determined that there was probable cause to believe they were obscene. The next day, February 16, the magistrate issued warrants for the search of Torch's person and for the search of his van. These provided for the seizure of

> records, documents, and writings related to the transportation, sale and distribution in interstate commerce of lewd, lascivious and filthy films, including route book, billing invoices, cash sales slips, credit memos, and other similar type documents, together with copies of lewd, lascivious, and filthy films and magazines, including a film labeled "Dog Fucker."

These warrants were executed that day, as was a warrant for search of the Majestic warehouse in Pittsburgh. On suppression motions, the district court suppressed some but not all of the materials seized in the search of Torch and his van, and denied Torch's standing to challenge the warehouse search.

Torch raises several arguments on appeal. The only ones to which we need devote discussion are that all the evidence seized in these searches should have been suppressed, and that the evidence adduced on trial was insufficient to support the conviction on the critical element of interstate transportation.

I

Torch argues that the warrants authorizing the search of his person and of his van did not set forth with sufficient particularity the things to be seized, rendering them constitutionally impermissible as general warrants.

The requirement set forth in the Fourth Amendment that things to be seized be particularly described is to prevent "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). This is accomplished by removing from the officer executing the warrant all discretion as to what is to be seized. As Torch correctly points out, the particularity requirement is even more stringent where the things to be seized have the presumptive protection of the First Amendment: "the constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude when the 'things' are books, and the basis for their seizure is the ideas which they contain." *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965). A warrant may not simply direct the officers to seize "obscene" materials, leaving it to the officers to decide what is "obscene" and what is not. *Lo-Ji Sales, Inc. v. New York*, —— U.S. ——, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); *Marcus v. Search Warrant*, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). *See also Heller v. New York*, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); *Roaden v. Kentucky*, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973).

Torch has largely won this argument already, however. The district court held that the warrants authorized the seizure of "two different kinds of property: (1) business records kept by Torch and Majestic News Company pertaining to the transportation of allegedly obscene materials; and (2) the allegedly obscene materials themselves." The district court found the warrants invalid as to the films and magazines themselves, except the film "Dog Fucker," which was particularly named, but found the warrants valid as to the business records.

Torch argues that the same standard for judging the validity of the warrants as to the films and magazines should have ap-

plied to the business records. Specifically, his argument is that

> [h]aving reached the conclusion that the officers could not make an ad hoc determination of the obscenity vel non of the publications, it logically follows that the officers were no better able to make a determination as to what "written material and records" would show the transportation of obscene material in interstate commerce.

We do not agree that this follows as the night the day. The Supreme Court in *Stanford*, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 was careful to limit its holding there to materials under the presumptive protection of the First Amendment:

> The word "books" in the context of a phrase like "books and records" has, of course, a quite different meaning. A "book" which is no more than a ledger of an unlawful enterprise thus might stand on a quite different constitutional footing from the books involved in the present case.

*Id.* at 485 n.16, 85 S.Ct. at 512.

The Ninth Circuit in *United States v. Jacobs*, 513 F.2d 564 (9th Cir. 1975) dealt with arguments similar to those of Torch here. There the warrants had authorized the seizure of "documents pertaining to the interstate shipment of obscene materials." The court said that the defendant's reliance on *Marcus* and other cases

> holding improper warrants based on the conclusionary opinion of a police officer that books or films are "obscene," and requiring a prior independent judicial determination of the probable obscenity of particular items to be seized, is misplaced. Those cases seek to limit the discretion of the police to make ad hoc determinations of obscenity because such a procedure threatens to suppress protected material. The items named in this warrant were evidentiary materials, and their seizure

did not threaten to deprive the public of access to protected material.

*Id.* at 567 n.3.

In contexts that do not involve First Amendment considerations, the test for the necessary particularity is a pragmatic one: "The degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved . . . [T]here is a practical margin of flexibility permitted by the constitutional requirement for particularity in the description of items to be seized." *United States v. Davis*, 542 F.2d 743, 745 (8th Cir. 1976).

Tested by this standard, we believe the warrants described with sufficient particularity the documents to be seized. The circumstances of the search and the nature of the things to be seized both served to limit the discretion of the officers who conducted the search. The area to be searched was Torch's person and the van he used to make deliveries. The documents to be seized were those related to the transactions Torch entered into during his brief trip into West Virginia.

It is true that, since Torch had been indicted immediately before the warrants issued, the warrants could have referred specifically to the five films named in the indictment. We are not convinced, however, that Torch's Fourth Amendment rights would have been significantly better protected by requiring that the officers scour each document for some reference to those five films.

We believe that this case falls within the "practical margin of flexibility."

## II

■ Torch also argues that the district court erred in finding that he had no legitimate expectation of privacy in the Majestic warehouse and that he could not therefore challenge the introduction of evidence seized there.[1]

---

1. The parties discuss this issue as one of "standing." The Supreme Court, however, has recently rejected the use of that term in the analysis of this issue, *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), and we employ the *Rakas* analysis and terminology in deference.

The rights guaranteed by the Fourth Amendment are personal, and may not be asserted vicariously. "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas v. Illinois*, 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). The test for whether a person may have evidence obtained in an unlawful search and seizure suppressed is whether the person had a "reasonable expectation of freedom from government intrusion" in the invaded place. *Mancusi v. DeForte*, 392 U.S. 364, 368, 88 S.Ct. 2120, 2124, 20 L.Ed.2d 1154 (1968).[2]

We must agree with the district court that the Majestic warehouse .was no such sanctum for Torch. Torch was not present at the Pittsburgh warehouse when it was searched, but in West Virginia. He was employed by Majestic, but had no financial interest in Majestic nor in the warehouse. As a salesman for Majestic, Torch did from time to time use some portion of the warehouse, but there was no specific area set aside for his use. A desk that Torch occasionally used was not kept locked and all other employees had access to the same desk. The district court concluded that the "nature and character" of the warehouse was such that Torch would have no reasonable expectation of privacy there.[3]

Nor would any interest by Torch in the records seized create such an expectation of privacy. While some of the records were in Torch's handwriting, none were in his custody when seized. These records were kept during the normal course of Majestic's business by its employees for its benefit.

A person need not have exclusive use of an area to have a reasonable expectation of privacy there. *DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154. Occasional presence, however, without any right to exclude others, is not enough. *See Rakas*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387. Torch may not complain of the search of the Majestic warehouse.

### III

█ Torch also argues that there was not sufficient evidence to show that he had knowingly transported the five films across state lines. The test is whether the evidence, considered in the light most favorable to the government, was sufficient to permit the trier of fact to find guilt beyond a reasonable doubt. *United States v. Sherman*, 421 F.2d 198 (4th Cir. 1970) (per curiam). We believe the evidence meets this test.

There was evidence that Majestic operated an adult bookstore in Wheeling, West Virginia, but there was no evidence that Majestic operated a warehouse other than the one located in Pittsburgh. Two West Virginia dealers—one of them Holdren—testified to visiting the Majestic warehouse there. In addition, the records seized referred to it simply as "the warehouse."

Holdren testified that Torch telephoned him on February 11, 1977 and solicited an order that Torch was to deliver the following Monday, February 14. Telephone records produced at trial showed that a call had been made to Holdren on February 11 from the Pittsburgh warehouse, and an F.B.I. agent testified to having seen Torch and his van at the Majestic warehouse that day. Torch's entry in his "Salesman's Daily

---

2. The Supreme Court in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) carved out an exception to this, the test "ordinarily" to be applied, where possession of the seized property is an element of the crime charged. This exception is inapplicable here, as possession is not an element of a violation of 18 U.S.C. § 1465.

3. The character of the invaded place is clearly important. In *Rakas*, 439 U.S. 128, 99 S.Ct.

421, 58 L.Ed.2d 387, the search was of an automobile, which the court noted has a lesser expectation of privacy associated with it. In *United States v. Britt*, 508 F.2d 1052 (5th Cir. 1975), the invaded place was a "storage area." The court held that there was no reasonable expectation of privacy, as there was no "demonstrated nexus between the area searched and the work space of the defendant." *Id.* at 1056.

Report" for February 11 read: "Inventory and reload. Filled orders for Charleston trip." Copies of three of the five films the jury found obscene were seized at the Majestic warehouse, and documents seized there showed that a fourth had recently been in stock.

The test for sufficiency of the evidence is not defeated merely because other possibilities than that probative of guilt can be inferred from it. The evidence that Torch transported the films in interstate commerce is concededly circumstantial, but we conclude that it was sufficient under the established test.

Finding no error in these or other points raised on appeal, we affirm the convictions.

*AFFIRMED.*