**UNITED STATES of America**

v.

**George NADER.**

**Crim. No. 85–33.**

United States District Court, District of Columbia.

Nov. 14, 1985.

Asst. U.S. Atty., Ronald Dixon, Washington, D.C., for plaintiff.

David Povich, Washington, D.C., for defendant.

## OPINION

JOHN GARRETT PENN, District Judge.

The defendant is charged in a two count indictment with using or causing use of the mails for the mailing, carriage and delivery of obscene material, (18 U.S.C. § 1461), importation of obscene material into the United States (18 U.S.C. § 1462), and aiding and

abetting (18 U.S.C. § 2). The case is now before the Court on one part of the defendant's motion to suppress evidence.

In his motion to suppress evidence, the defendant contends that; (1) the search of his room was conducted pursuant to a general warrant in violation of the his rights under the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, (2) Custom officials lacked "reasonable cause" for the initial search of the envelope addressed to the defendant as required by 19 U.S.C. § 482, (3) the subsequent delivery of the envelope to the defendant's home was in violation of federal law, 19 U.S.C. § 1305, (4) the statements allegedly made by the defendant were a direct result of the unlawful search and seizure of material from the defendant's home and, (5) the statements allegedly made by the defendant were obtained in violation of his Fifth and Fourteenth Amendment rights because they were induced by material misrepresentations by government agents. The government opposes all aspects of the defendant's motion. At the time of the hearing, the defendant withdrew the second and third parts of his motion and the parties elected to address only the first part of the motion which raises the question whether the search warrant issued in this case was a general warrant, and whether, in any event, the Court should decline to apply the exclusionary rule on the facts of this case.[1] The parties agreed not to go forward on the fourth and fifth parts of the motion until after a ruling on the third part since consideration of the last two parts of the motion would require a factual hearing, and because a ruling granting the third part of the motion would render the remaining parts moot.[2]

**I**

The underlying facts are as follows: On or about March 27, 1984, Andrew Taylor, a Customs Inspector, United States Customs Service, who was then assigned to make border searches of incoming mail, performed a customs inspection on a first-class letter, in the form of a brown mailing pouch type envelope, addressed to "Mr. J. Nader c/o International Insight, 2019 Connecticut Avenue, N.W., Washington, D.C. 20008, U.S.A." The customs declaration disclosed that the package contained "books". The return address given on the envelope was "Ralf Zonatz, 1012 LA Amsterdam, DOMRAK 42–43 Holland." The package was opened by the Customs Inspector because he felt he had reasonable grounds to suspect that the material enclosed therein was being imported into the United States contrary to law. *See* 19 U.S.C. § 482. Inside he found an eight-mm movie film, four magazines and one advertisement for another film. For the purposes of the instant motion, the Court assumes that the film and the magazines are obscene.[3] Also reviewed at the same time were two other magazines found in the package, "Boy No. 53" and "Sweet Little Sixteen, Volume 3, No. 8" and two pictures. The magazines and the pictures depict nude boys. This latter group of material differs from the earlier described material in that, while the latter group of material consisted only of pictures of nude boys, the earlier described material depicted nude boys engaged in a variety of sexual acts.[4]

The material was reenclosed in the original package and mailed by registered mail to the Office of Investigations, United States Custom Service, Reston, Virginia. The package was then personally opened by Special Agent Don Bludworth. The ma-

---

1. *See United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Massachusetts v. Sheppard,* —— U.S. ——, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).

2. The Speedy Trial Act, 18 U.S.C. § 3161 *et seq.,* is still tolled in view of the agreement of the parties that the Court should not address the fourth and fifth parts of the motion at this time. *See* 18 U.S.C. § 3161(h)(1)(F).

3. The Court has viewed the material and cannot quarrel with the conclusion of the government agents and the magistrate that the material is obscene.

4. It is significant that the agents in applying for a warrant distinguished between the two groups of material.

terial is described in the affidavit in support of the search warrant. *See* Bludworth Affidavit at 2.

On April 10, 1984, the "obscene" items were shown to a United States Magistrate, United States District Court for the District of Columbia. Prior to this time, Special Agent Bludworth interviewed Special Agent Hekala of the United States Custom Service, who had conducted, during the period 1975 to 1980, approximately 150 investigations of illegal importation of pornography, particularly pedophelia. Special Agent Hekala advised Agent Bludworth that in his experience, persons who order pedophelia material from overseas retain copies of order blanks and catalogues for such material and also retain evidence of payment. He further advised that pedophiles keep records of all purchases to keep tract of the reliability of suppliers and that generally, pedophiles have large quantities of pornographic material which is usually of foreign origin. All of the above is set forth in the affidavit submitted in support of the search warrant. A warrant and a supporting affidavit were submitted to the magistrate but the magistrate withheld signing the warrant until delivery to the defendant had been effected.

Thereafter, the agents twice attempted to deliver the material to the defendant. The package was finally delivered on April 12, 1984, and was signed for by the defendant's landlord.[5] Once the package was delivered, the agents advised another agent, who in turn presented the application for a warrant to the magistrate who then signed the warrant authorizing the agents to deliver and search defendant's house. The government states that the magistrate informed Bludworth that it was his belief "that once the package was delivered to the addressee's premises, probable cause existed to search the premises for the contents of the package as well as other related items."[6] Opposition to Motion to Suppress Evidence at 3.

When the warrant was signed, the agents returned to the defendant's home and executed the warrant. They found the package on a table in the hallway. The package was seized and then the agents conducted a general search of the defendant's room. They seized similar material, which can be described as obscene, and other material depicting material similar to the second group of materials described in the affidavit in support of the warrant. This latter group is not considered as obscene since it depicts only nude boys who are not engaged in any type of sexual or suggestive acts. In addition, the agents seized newspaper clippings, toys, stuffed animals and photo albums. This last group of materials relates to the personal life of the defendant and appears to have no relevance to the charges pending before the Court, except perhaps to identify the room as that of the defendant. The photo albums are nothing more than pictures of the defendant, and apparently families he has visited on his many trips overseas in the

---

5. It was ascertained at the time of the search that the defendant rented a room from an elderly couple in a private home.

6. The defendant does not challenge the actions of the magistrate in advising the government agents on how to establish probable cause. Although the Court need not address this issue, it notes that the facts relating to the magistrate's participation differs from those involved in *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979). There, the Town Justice signed the warrant, which was incomplete and open ended, and then accompanied the officers searching the store. The Supreme Court noted that "[t]he Town Justice did not manifest that neutrality and detachment demanded of a judicial officer when presented

with a warrant application for a search and seizure." U.S. at 326, 99 S.Ct. at 2324 (citation omitted). That issue is not raised here where the magistrate advised the government agents that probable cause would not arise until after the package was delivered, since absent delivery, there was no basis to conduct this search for the items described with particularity in the warrant. *See* U.S. at 327 n. 6, 99 S.Ct. at 2325, n. 6. ("Magistrate [does not] loose [ ] his character as such merely because he leaves his regular office in order to make himself more readily available to law enforcement officers"), *Heller v. New York,* 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1983) (judge went to theatre and after viewing the film signed the search warrant while still in the theatre).

conduct of his business. Presumably, this group of material was seized to identify the defendant and to establish that the room searched was indeed his room.

The defendant, and his then counsel, met with the government agents four days after the search, but that meeting is not relevant to the part of the motion now under consideration.

## II

The warrant issued in this case provided that, "there is now being concealed certain property, namely [description of the original items intercepted in the mails on March 27, 1984] in addition to other photographs, magazines, writings and documents which are evidence of violations of Title 18 U.S. Code Section 1461 and 1462". The government agents were directed to seize the material. The defendant argues that the above is in the nature of a general warrant.

■ The Supreme Court in addressing the issue of general warrants observed:

General warrants of course, are prohibited by the Fourth Amendment. "[T]he problem [posed by the general warrant] is not that of intrusion *per se*, but of a general, exploratory rummaging in a person's belongings.... [The Fourth Amendment addresses the problem]by requiring a 'particular description' of the things to be seized".... This requirement " 'makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another. As is to what is to be taken, nothing is left to othe discretiono of the officer executing the warrant.' "

*Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976) (citations omitted). Another court noted that:

When there is probable cause to believe that a premises to be searched contains a class of generic items or goods, a portion of which are stolen or contraband, a search warrant may direct inspection of the entire class of all of the goods if there are objective, articulated standards for the executing officers to distinguish between property legally possessed and that which is not.... A search warrant authorizing inspection will not be a general warrant if such standards reasonably guide the officers in avoiding seizure of protected property, and if upon return of the warrant the magistrate may review the search to determine whether the instructions were followed and legitimate property and privacy interests were protected. The standards may be contained in the search warrant or, if certain conditions are met, in the accompanying affidavit. The search warrant may be construed with reference to the affidavit for purposes of satisfying the particularity requirement if (1) the affidavit accompanies the warrant, and (2) the warrant uses suitable words of reference which incorporate the affidavit therein.

*United States v. Hillyard*, 677 F.2d 1336, 1340 (9th Cir.1982) (citations omitted). A search warrant must disclose the things to be seized with the most "scrupulous exactitude" when the things are books and the basis for their seizure is the ideas they contain. *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 511–512, 13 L.Ed.2d 431 (1965).

Turning to the facts of the instant case, it is noted that the warrant specifically described the items which had previously been viewed by the government agents and the magistrate and that if the warrant had stopped there and the agents had seized nothing else, the part of the motion now under consideration would be without merit. But, of course, the warrant did not stop at that point. It provided that the agents could seize, in addition to the above, "other photographs, magazine, writings and documents which are evidence of violations of Title 18, U.S. Code Sections 1461 and 1462."

The quoted language is broad and it fails to instruct the agents executing the warrant what they are to seize. This can be illustrated by two examples. First, the warrant allows the agents to determine

what evidence constitutes a violation of 18 U.S.C. §§ 1461 and 1462. In making that determination they must necessarily make a determination as to what is obscene, for it is not a violation of the statute to have mailed or imported any items from a foreign country, or indeed, to have mailed or imported pictures of nude boys or girls no matter how repugnant such activity may be to some members of the public at large.[7]

Second, the warrant gave little or no direction as to items which one must suspect that the government agents really wanted, in addition to the "obscene materials" already seized, such as other mailings received from foreign countries, or from the sender in particular, or order forms or blanks or copies of letters to senders of the material, all of which would be a link in the chain of evidence. The warrant fails even to direct the agents to seize *similar* pictures, books or magazines. For example the agents in applying for the warrant seemed to draw a distinction between two types of magazines, one "Piccalo Extra No. 15" which depicts young boys commiting acts of masturbation and fellatio and "Boy No. 53" containing pictures of nude and dressed boys who are not depicted in sexual acts. Thus, the warrant could have directed the agents to seize "Piccalo" magazines since presumably the agents knew that those magazines contained the same type of pictures; or the warrant could have described in detail the types of acts which are obscene. The Court does not say that such a warrant would have been valid, but it certainly would have been closer to the requirements of the Fourth Amendment and would have evidenced an intent to describe the material to be seized with "scrupulous exactitude".

The failure of the search warrant is that, at least with respect to "obscene" material, it leaves the definition of "obscene" to the officers executing the warrant. *See Marcus v. Search Warrant*, 367 U.S. 717, 731–32, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 (warrant based on the assertion of a single

police officer without scrutiny of a judge is invalid). Although *Marcus* dealt with the issuance of the warrant rather than its execution, the same standard would apply. In both situations, under *Marcus* and here, it is the officers or agents who are asked to make the determination of whether the material in question is obscene.

The defendant also cites the Court to *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979), but the primary thrust in that case was that the warrant was open-ended rather than a general warrant. There, the Town Justice signed an open-ended warrant and then accompanied the officers who were to execute the warrant to the store that was to be searched. The Supreme Court noted that the Town Justice "did not manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application for a search and seizure." U.S. at 326, 99 S.Ct. at 2324 (citations omitted). "He [the Town Justice] allowed himself to become a member, if not the leader, of the search party which was essentially a police operation." *Id.* The Supreme Court held that the motion to suppress should have been granted.

■ In this case, just viewing the language of the warrant alone, this Court must conclude that the warrant is a general warrant insofar as it refers to items other than the six items described with particularity.

### III

Notwithstanding that the warrant itself is general and does not describe the items to be seized with sufficient particularity, the question is raised as to whether a reference to the supporting affidavit will supply the specificity required to uphold the warrant.

■ A court in examining the validity of a warrant may look to the supporting affidavit for a description of the property to be seized only if and when the affidavit ac-

---

7. There is no doubt that some members of the public might well object to some works of art imported by art galleries, museums or collectors.

**1082**

companies the warrant *and* the warrant uses words of reference which incorporate the affidavit as a part of the warrant. *See United States v. Hillyard, supra* at 1340; *United States v. Womack,* 166 U.S.App. D.C. 35, 49, 509 F.2d 368, 382 (1974); *United States v. Thompson,* 161 U.S.App.D.C. 339, 344, n. 4, 495 F.2d 165, 170, n. 4 (1974); *Moore v. United States,* 149 U.S.App.D.C. 150, 152, 461 F.2d 1236, 1238 (1972), *United States v. Anderson,* 618 F.Supp. 1335, 1339–40 (D.D.C.1985).

■ The warrant in this case does not make reference to and incorporate the affidavits filed in the case. The form affidavit seeks to incorporate any other affidavits by providing "see attached affidavit which is incorporated as part of this affidavit for search warrant". The magistrate or the officers could have incorporated the affidavits by using similar language in the body of the warrant. Since they did not do so, the Court cannot properly refer to the supporting affidavits to satisfy the particularity requirement for a warrant under the Fourth Amendment.

■ Even if the affidavit had been incorporated, however, the fact is that the language contained in the affidavit does not describe the items to be seized with particularity. The affidavit sets forth background information and then describes the items which were reviewed by the Customs Inspector and taken to the magistrate. The affidavit establishes probable cause to search for and seize the items identified in the warrant and in the affidavit. However, in referring to other items to be seized, the affidavit merely states "that there is currently secreted inside of 2019 Connecticut Ave., N.W., Washington, D.C., 20008, items described herein [the items described with particularity which were originally reviewed on March 27, 1984] *as well as other photographs, magazines, writings, and documents which are evidence of violations of Title 18 U.S.C. §§ 1462 and 1461* " (emphasis the Court's). Thus, the affidavit adds nothing which would assist the agents and officers executing the warrant in determining what they should seize. In short,

the same defect found in the warrant is also found in the affidavit. *See* Part II, *supra.* The agents and the officers are required to determine what is evidence of a violation of 18 U.S.C. §§ 1461 and 1462 and what is obscene. Such "evidence" can range from pictures, magazine, books and writings to tickets, stamps and mailing covers. The agents and officers executing the warrant also thought that it included newspaper interviews conducted by the defendant in a nationally known newspaper having nothing to do with obscenity or sex, toys and family type photo albums depicting the defendant with friends.

The Court concludes that the warrant does not incorporate the affidavits. The Court concludes further that even if it did, the language contained in the affidavits is not sufficient for the Court to find particularity as would satisfy the requirements of the Fourth Amendment.

### IV

The next issue presented is whether the exclusionary rule should be applied under the facts of this case. Recently, the Supreme Court has had occasion to decide that the exclusionary rule should not be applied when the officer conducting the search acted in "objectively reasonably reliance" on a warrant issued by a detached and neutral magistrate that subsequently is determined to be invalid. *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Massachusetts v. Sheppard,* —— U.S. ——, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).

The facts in this case are more closely identified with the facts in *Sheppard* than those in *Leon.* In *Leon,* the state court determined that the warrant was invalid because the supporting papers did not establish probable cause. 104 S.Ct. at 3412 (the Supreme Court accepted the Court of Appeals conclusion that probable cause was lacking). In *Sheppard,* the supporting papers established probable cause but the warrant did not describe the property to be seized.

The investigation in *Sheppard* related to a homicide which occurred on Saturday, May 5, 1979. That day, the officers received information which led them to focus their investigation on Sheppard and, as a result, they sought to obtain a warrant to search Sheppard's house. An affidavit was prepared, but by that time, it was Sunday and the officers had difficulty in locating an appropriate warrant application and form. The warrant they ultimately used was a form warrant which was designed to authorize a search for "controlled substances"; i.e., illegal drugs. Although the officers and the judge who issued the warrant attempted to modify the form warrant, everyone omitted changing that part of the warrant which authorized a search for "controlled substances". The search was conducted pursuant to the warrant and the items found were eventually introduced during Sheppard's trial after which he was found guilty. The trial court and the majority of the justices on the Supreme Judicial Court for Massachusetts found that the warrant was constitutionally defective "because the description in the warrant was completely inaccurate and the warrant did not incorporate the description found in the affidavit." 104 S.Ct. at 3428, n. 5. The state courts found, however, that the officers believed that the warrant authorized the search that they conducted and that there was an objectively reasonable basis for the officers' mistaken belief. 104 S.Ct. at 3428–3429. The Supreme Court affirmed, noting that "a reasonable police officer would have concluded [as did the officers in *Sheppard*] that the warrant authorized a search for the material outlined in the affidavit." 104 S.Ct. at 3429.

The instant case is distinguishable from *Sheppard* for a number of reasons. In *Sheppard* "[t]he scope of the ensuing search was limited to items listed in the affidavit." In that case the police found a pair of blood stained boots, blood stains on a concrete floor, a blood stained envelope, a pair of men's jockey shorts and women's leotards with blood on them, three types of wire, and a woman's hair piece, subsequently identified as the victim's. 104 S.Ct. at 3428 n. 4. When one reads the affidavit and the description of the items which were the subject of the search, and compares that description with what was actually found and seized by the officers, it is clear that the officers seized only those items described in the affidavit. Although the *Sheppard* affidavit did not disclose the exact items to be seized, for example, "an earring" or "a blood stained envelope", it did authorize a search for, among other things, "any possessions of Sandra D. Boulware, similar type wire and rope that matched those on the body of Sandra D. Boulware, or in [the defendant's automobile].... A blunt instrument might have been used on the victim, men's or women's clothing that may have blood, gasoline burns on them. Items that may have fingerprints of the victim." 104 S.Ct. at 3427. Such language was sufficient to comply with the requirements of the Fourth Amendment. That language was also consistent with what was found at the scene of the crime.[8] The problem was that the warrant itself did not give a description of the property to be seized *and* the warrant did not incorporate the descriptions contained in the affidavit. *Id.*

Here, of course, the facts differ. Neither the warrant nor the affidavit describe the items to be seized other than those six items which were described with particularity. *See* Parts II and III, *supra.* Rather, it was left up to the agents and the officers to decide what was evidence demonstrating a violation of 18 U.S.C. §§ 1461 and 1462. Necessarily, they had to decide what was obscene. The lack of particularity in this case allowed the officers to rummage, at will, through the defendant's room as is evidenced by the items seized during the search.

---

8. Sheppard consented to a search of his automobile and at that time the police found "[b]lood stains and pieces of hair [ ] on the rear bumper and within the trunk compartment.... Strands of wire in the trunk similar to wire strands found on and near the body of the victim." 104 S.Ct. at 3426.

A further distinction is that this case, unlike *Sheppard* or *Leon,* involves First Amendment issues. This is not a case where officers were directed to seize specific tangible items such as weapons, or drugs, or gambling paraphernalia. Here they were told to seize material which was obscene. "To tell the officers to seize anything which, in their opinion, [is obscene] is not *'scrupulous exactitude'.* Nor does it become such by adding 'of the same tenor' as three named magazines; especially when the sameness is so broadly defined as to include any communicative material, from books to prints to motion pictures." *United States v. Guarino,* 729 F.2d 864, 867 (1st Cir.1984) (en banc). In *Guarino,* there was a dissent, but it seems unlikely that the dissent would have upheld the present warrant because the dissent found that the particularity requirement in that case was satisfied by the magistrate's order which sought to define obscenity for the officers executing the warrant. 729 F.2d at 872 (Breyer, J. dissenting).

■ Nor can this Court accept the government's oral argument that in conducting the search the officers were concerned that the defendant, a suspected pedophile, was likely to seek to contact children and that therefore this somehow justified the broad language of the warrant and the scope of the search actually conducted. The government, after seizing the material, may have attempted to contact the parents of some of the children named or pictured in the defendant's albums. But, as the Court has observed, those pictures were not suggestive of any illegal activity; rather they were family scenes some of which included the defendant, and some of which included pictures of children taken with their parents. If those albums had not been connected with this defendant, it is extremely doubtful that anyone would have given a second thought to them. The above actions of the officers demonstrates the risk of a general warrant, especially in a First Amendment case. No evidence was presented at the time of the issuance of the warrant, or at the time of the hearing in this case, that suggested that the defendant was attempting to contact children for any illegal activity. The comments of the Court in this regard are not to be taken as an overall criticism of the agents and officers conducting the search; indeed, this Court believes that they were only attempting to conduct a legitimate search because of *suspected* activities of the defendant and for the protection of any children who may have been involved. But the issue before the Court cannot be based upon the intuition of the agents and officers, but rather, must be based upon the requirements of the Fourth Amendment.

■ The Supreme Court has not held that all the government must do to override the exclusionary rule is to show that the search was authorized by a warrant signed by a detached and neutral magistrate. If that was the import of the ruling then it would seem that defendants would have lost the right to challenge the sufficiency of a warrant, for under such a ruling, a victory would be academic. Indeed, the Supreme Court has stated that, "depending on the circumstances of a particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched *or the things to be seized* —that the executing officers cannot reasonably presume it is valid." *Leon,* 104 S.Ct. at 3422 (citation omitted, emphasis the Court's). The instant case is such a case.

Here the warrant is so general that the executing officers could not reasonably presume it to be valid. While the officers are not experts in the First and Fourth Amendments, the fact that the warrant and affidavit gave them unfettered discretion to seize anything which in their opinion is evidence of a violation of one or both of the involved federal statutes should have been enough to give them reason to pause. For these reasons, nothing in this case demonstrates that the exclusionary rule should not be applied.

## V

The Court has concluded that the warrant is a general warrant, and further, that

there is no basis not to apply the exclusionary rule. The question remains whether the seizure of the six items described with particularity in the warrant can be upheld by severing the general part of the warrant. In other words, may the government now use the materials originally intercepted on March 27, 1984, in its prosecution of the defendant.

It is clear that once the six items were intercepted by the governments agents and determined to be "obscene" by the magistrate, and once delivery was made to the defendant, there was probable cause to issue the search warrant. *See* Part I, note 3, *supra*. It is also clear that the six items were described in the warrant with "scrupulous exactitude". Thus, if the offending part of the warrant may be severed, the remaining part is valid.

A number of courts have held severance to be appropriate where a part of the warrant is invalid. *See United States v. Fitzgerald,* 724 F.2d 633 (8th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 538 (1984); *Sovereign News Co. v. United States,* 690 F.2d 569 (6th Cir.1982), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *United States v. Riggs,* 690 F.2d 298 (1st Cir.1982); *United States v. Christine,* 687 F.2d 749 (3d Cir.1982); *United States v. Freeman,* 685 F.2d 942 (5th Cir.1982); *United States v. Torch,* 609 F.2d 1088 (4th Cir.1979). In *Freeman,* the court observed that "[i]f the police have probable cause to search for Item A but not for Item B, and a warrant is issued for both, it seems unfair to law enforcement officials not to allow A in if the search was otherwise properly conducted." 685 F.2d at 952 (citation omitted).

Moreover, although most of the above cases relate to searches for property other than allegedly "obscene" materials, a search for obscene materials was involved in *Sovereign News, Riggs* and *Torch.* In *Sovereign News,* the magistrate issued a warrant for specifically identified films and magazines said to be obscene, and authorized the seizure of "other magazines of the same kind and nature." The defendant

argued that the warrant was impermissibly broad but the court stated that, "[w]e refuse to invalidate the entire warrant as appellant requests. Where the police and the issuing magistrate have listed the titles of the primary targets of the search, we will not invalidate the entire warrant. Rather, we will sever those portions containing the overbroad language and allow the items seized under the proper section to stand as evidence." 690 F.2d at 576 (citations omitted). The court in *Riggs* reached the same result. It severed the impermissible part of the warrant and upheld that part which described the film to be seized with particularity. 690 F.2d at 300–301. Finally, the court in *Torch* recognized that the district court had properly severed the invalid part of the warrant and upheld that part of the warrant which described the film to be seized. 609 F.2d at 1089.

The Court of Appeals for this circuit has had occasion to address the issue of severence. *See In Re Search Warrant Dated July 4, 1977,* 215 U.S.App.D.C. 74, 667 F.2d 117 (1981), *cert. denied, sub-nom, Hubbard v. United States,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982); *Huffman v. United States,* 152 U.S.App.D.C. 238, 470 F.2d 386 (1971). In *Huffman,* the warrant incorporated the supporting affidavit which described the items to be seized as "Modern Girls" and "Girls", which had been viewed by the judge who issued the warrant, "as well as other magazines of a similar appearance and contents." The court recognized the severability of the seized evidence and upheld the seizure of the items described with particularity. U.S.App.D.C. at 245, n. 7, 470 F.2d at 393, n. 7.

■ The Court concludes then that it is proper to sever the offending portions of the warrant and uphold so much of the warrant as described the six items with particularity.

## VI

In sum, this Court holds that the warrant read in its entirety amounts to a general warrant which is impermissibly broad and

in violation of the Fourth Amendment to the Constitution. The Court further holds that there is no basis not to apply the exclusionary rule in this case. Finally, the Court rules that the offending portions of the warrant may be severed and that the search and seizure of the six items described with particularity in the warrant may be upheld.

An appropriate Order has been issued.