**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 97-4011

MICHAEL BRUCE SASSANI,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Deborah K. Chasanow, District Judge.
(CR-96-12DKC)

Argued: December 5, 1997

Decided: March 4, 1998

Before NIEMEYER, Circuit Judge, BUTZNER, Senior Circuit
Judge, and MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Roger Mark Adelman, KIRKPATRICK & LOCKHART,
L.L.P., Washington, D.C., for Appellant. Sandra Wilkinson, Assistant
United States Attorney, Greenbelt, Maryland, for Appellee. **ON
BRIEF:** Lynne A. Battaglia, United States Attorney, Beth P. Gesner,
Assistant United States Attorney, Greenbelt, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Background

In 1994, the Federal Bureau of Investigation was notified by an America OnLine[1] customer and police officer, Richard Ivey, of receipt of unsolicited pornographic graphic[2] image files from another America OnLine subscriber by the name of "BIG MIKE 8." In September 1994, a special agent of the FBI, acting in an undercover capacity, engaged in electronic conversations with BIG MIKE 8, in connection with which BIG MIKE 8 transmitted, via America OnLine, at least five sexually explicit graphic images of persons apparently under the age of eighteen. In October 1994, a cooperating witness also received from BIG MIKE 8 an electronically transmitted message and sexually explicit graphic image of two persons apparently under the age of eighteen. Further investigation revealed the subscriber "BIG MIKE 8" to be registered as Michael Bruce Sassani. In March 1995, four more sexually explicit graphic images, including pictures of individuals apparently under the age of eighteen, were electronically transmitted to undercover agents by BIG MIKE 8.

On 13 September 1995, Federal Bureau of Investigation (FBI) agents executed a search warrant at the home of Michael Sassani in Maryland. During the six-hour search, the agents seized Mr. Sassani's personal computer, 382 floppy disks, numerous personal documents and photographs, and a small quantity of narcotics. [3] After extensive

_____

[1] America OnLine is a commercial computer service and online access provider.
[2] The court uses the adjective "graphic" only to identify the electronic files as pictorial representations.
[3] Mr. Sassani has been charged in Maryland state court with possession of narcotics. The case is pending.

2

review of the hard drive of the computer and the 382 floppy diskettes seized, the FBI determined that the drive and the disks contained a total of 176 visual depictions of minors engaged in sexually explicit conduct.[4] The agents concluded that at least ten of the pictures portrayed individuals under twelve years of age.

On January 22, 1996, defendant was indicted on six counts for violations of the Protection of Children Against Sexual Exploitation Act, 18 U.S.C. §§ 2251-2260 (West 1997). On May 20, 1996, the district court denied all of the defendant's pretrial motions, which included motions to suppress evidence, for an evidentiary hearing regarding the execution of the search warrant, and for an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). The United States filed a superseding indictment against Mr. Sassani on May 29, 1996. On July 29, 1996, Mr. Sassani entered a conditional plea of guilty to Count VI of the superseding indictment. Count VI charged possession of child pornography in violation of 18 U.S.C. § 2252(a)(4). As part of the factual stipulations underlying the plea, the defendant admitted to transmitting pornography on September 30, 1994. At the conclusion of a four-day sentencing hearing, the district court sentenced Mr. Sassani to eighteen months incarceration.[5]  The defendant raises three issues on appeal. First, the defendant argues that the district court erred when it denied an evidentiary hearing on the defendant's challenge to the sufficiency of the affidavit underlying the application for a search warrant. Second and related to the first, the defendant argues that the district court erred in denying the defendant's motion to suppress the evidence seized under the search warrant. Finally, defendant argues that the district court erred in refusing to depart downward for reduced mental capacity.

_____

[4] On the hard drive of the defendant's computer were 16,226 files, of which 56 were graphic images of individuals apparently under eighteen years of age. On 382 floppy diskettes were 6,731 files of which 120 were graphic images of individuals apparently under eighteen.

[5] This was the minimum possible sentence in the Sentencing Guideline range.

<u>The</u> <u>Franks</u> <u>Hearing</u>

The defendant argues first that the district court erred in refusing to hold a hearing on the defendant's motion to suppress the evidence seized from Mr. Sassani's home. However, a hearing on a motion to test the sufficiency of the warrant is required only under certain circumstances. <u>Simmons v. Poe</u> explains:

> This Court has construed the Supreme Court's opinion in <u>Franks v. Delaware</u>, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), very strictly, finding in large part that <u>Franks</u> hearings are not required unless an omission from a warrant affidavit is the product of a deliberate falsehood or done in reckless disregard of the truth. In <u>United States v. Colkley</u>, 899 F.2d 297 (4th Cir. 1990), this Court articulated the two-pronged standard under which <u>Franks</u> claims must be analyzed. In that case, we addressed whether an evidentiary hearing was required under <u>Franks</u> where the defendant challenged the affidavit used in support of his arrest warrant on the grounds that it failed to note that numerous witnesses did not identify him in a photographic spread, and because the police officer based the height description of the defendant in disregard of the testimony of some witnesses. 899 F.2d at 299. In finding that a <u>Franks</u> hearing on the facial validity of the affidavit was not warranted, we articulated a two-part threshold test for making such a determination: a <u>Franks</u> hearing is warranted if (1) the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in a warrant affidavit, and (2) the defendant shows that the false information was essential to the probable cause determination. Id. at 300.

47 F.3d 1370, 1378 (4th Cir. 1995). <u>See also United States v. Hartsell</u>, 127 F.3d 343 (4th Cir. 1997), <u>citing United States v. Jeffus</u>, 22 F.3d 554, 559 (4th Cir. 1994) ("We have held that a defendant must first make a showing that an affiant's statement in a warrant affidavit was deliberately or recklessly false and that the remaining facts contained in the affidavit are inadequate to sustain a finding of probable cause."). In the instant case, the defendant must show that information

4

to which he objects was an intentionally false statement or one made with "reckless disregard for the truth." Id. Additionally, however, the defendant bears the burden of showing that the information to which he objects was central to the finding of probable cause. The defendant has failed to make this showing.

The search warrant contained a seventeen-page affidavit filed by FBI Special Agent Courtland C. Jones. The affidavit contained six sections (Introduction, Child Pornographers, Computers and Child Pornography, America OnLine, Probable Cause, and Search & Seizure of Computer Systems). The defendant objects particularly to Section II (Child Pornographers) and Section V (Probable Cause) of the affidavit, arguing that the use of a profile in Section II was in "reckless disregard of the truth" and that Section V contains misstatements of fact.

Section II presents Special Agent Ken Lanning's profile of a child pornographer.[6] The profile includes the following elements: 1. Child pornography collectors exhibit many of the same traits as pedophiles or preferential child molesters; 2. Such individuals keep the pornographic materials for long periods of time in secure locations such as the privacy of their homes; and 3. They meet and correspond with others who share the same interest in child pornography. The defendant argues that this profile is inflammatory and has no connection to the defendant.

The defendant does not present the court with support for his assertion that the profile was required to meet the standards of Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), nor can this court find any such requirement. It is clear that the use of profiles, in conjunction with other evidence, to establish probable cause is allowable. See United States v. Aguiar, 825 F.2d 39, 40-41 (4th Cir. 1987) (finding the use of a drug courier profile along with other evidence to be sufficient to establish probable cause); Simmons v. Poe, supra, 47 F.3d at 1378 (discussing the use of a profile in establishing probable cause for a warrant). In the instant case, the profile was used in the affidavit to suggest that the defendant meets the profile of a traf-

_____

[6] The agent works and writes extensively in the field of investigation of child pornography and preferential child molestation.

5

ficker in child pornography and that, therefore, certain behaviors may be expected, including the behavior of keeping and storing pornographic images. The profile compared child pornographers to pedophiles, in terms of certain characteristics. It did not suggest that the two were the same. To the extent that Mr. Sassani objects to the alleged insinuation that he may be a pedophile, this court does not read the affidavit so to allege. In any case, the warrant established sufficient probable cause even should we find that the affidavit incorrectly insinuated pedophilia. More than the profile, the defendant's admission in his own Internet user profile that his hobbies included GIFs[7] and the fact that the defendant had transmitted such graphic files over the Internet suggested in and of themselves that such files might be found in the defendant's home and that a computer was being used in the home to transmit and receive images electronically.

The defendant also alleges that the "Probable Cause" section of the affidavit contained numerous misstatements of fact. The section identified BIG MIKE 8 as the code name used by Mr. Sassani. The section also identified BIG MIKE 8 as holding the phone number at Mr. Sassani's home address and as residing at Mr. Sassani's home address. The section also chronicled BIG MIKE 8's receipt and distribution of child pornography between August 1994 and March 1995. The affidavit represents that BIG MIKE 8 transmitted child pornography on ten occasions. The defendant argues there were only four occasions. The affidavit also represents that in March 1995, the defendant transmitted child pornography on four occasions and the defendant objects that he transmitted pornography only once in March 1995. The defendant further objects to the affidavit's representation of the total number of transmitted images, the "depiction" of the images (presumably, the agent's characterization of the subject matter of the graphic files transmitted), the circumstances of transmission to an undercover agent in September 1994, and the meaning of GIFs as that term is used in the affidavit.

_____

[7] A GIF is a graphics interchange format in which files may be stored and transmitted. The GIF format, owned by Compuserve, is widely used on the Internet for the transmission of all types of graphics files, not just pornographic images.

6

The Franks test requires a hearing on a motion to suppress only if the alleged misinformation is reckless and if probable cause would not exist without that information. The district court found, as do we, that the affidavit, even without the offending facts, was sufficient basis for probable cause. Whether there were four transmissions or ten, whether there was an actual transmission at one point or a forwarded transmission that originated from the defendant, the fact remains that there were transmissions of pornography by the defendant, giving rise to probable cause to search the defendant's home. We find no error in the district court's determination that a Franks hearing was not required.

The Search Warrant

The defendant also appeals the denial of the motion to suppress itself. The defendant asserts first that the warrant was not supported by fresh probable cause and, second, that the warrant failed to state with sufficient particularity the places to be searched and things to be seized.

The Fourth Amendment of the Constitution requires that probable cause support a warrant. The information on which such probable cause is based must be sufficiently fresh to warrant a belief that material evidence of criminal activity may yet be found in the area to be searched. United States v. McCall, 740 F.2d 1331, 1335-1336 (4th Cir. 1984). McCall states:

> The fourth amendment bars search warrants issued on less than probable cause, and there is no question that time is a crucial element of probable cause. A valid search warrant may issue only upon allegations of "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case." Sgro v. United States, 287 U.S. 206, 210-11, 53 S.Ct. 138, 140-41, 77 L.Ed. 260 (1932). See also, e.g., United States v. Watson, 423 U.S. 411, 449 n. 14, 96 S.Ct. 820, 840 n. 14, 46 L.Ed.2d 598 (1976) (Marshall, J., dissenting); United States v. Freeman, 685 F.2d 942, 951-52 (5th Cir. 1982); United States v. Beltempo, 675 F.2d 472, 476-79 (2d Cir.),

7

> cert. denied, 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d
> 1353 (1982); United States v. Button, 653 F.2d 319, 324-25
> (8th Cir. 1981).

Id. McCall explains that a continuing pattern of behavior might give probable cause where a single offense would not after a certain period of time. There must exist probable cause that evidence of criminal activity will exist at the time of the search. In the case before the court, such probable cause existed. Numerous cases support a finding that distribution of child pornography on several different occasions may provide sufficient probable cause despite delay between a distribution and the date a search warrant is sought or executed. See, e.g., United States v. Bateman, 805 F.Supp. 1041, 1043 (D.N.H. 1992) (upholding warrant with seven-month delay between distribution of child pornography and execution of the warrant because of the "unique nature of the creation, storage, keeping, alteration, potential destruction of the child pornography material" and the "recognized interest which the states and the federal government have in drying up the distribution network for child pornography"); United States v. Rakowski, 714 F.Supp. 1324, 1330 (D. Vt. 1987) (upholding warrant based on information one to six months old because"those who collect child pornography keep the pornography, do not destroy their collections, and keep the pornography accessible"); United States v. Lacy, 119 F.2d 742, 745 (9th Cir. 1997) (upholding search warrant based on information ten months old because "the[agent] explained that collectors and distributors of child pornography value their sexually explicit materials highly, `rarely if ever' dispose of such material, and store it `for long periods' in a secure place, typically in their homes"); United States v. Riccardelli, 998 F.2d 8, 12 (1st Cir. 1993) (stating, "history teaches that [pornography] collectors prefer not to dispose of their dross, typically retaining obscene materials for years"); United States v. Harvey, 2 F.3d 1318, 1322 (3d Cir. 1993) (basing, at least in part, a conclusion that a warrant was not based on stale information on the fact that those who collect child pornography tend to keep it); United States v. Rabe, 848 F.2d 994, 996 (9th Cir. 1988) (holding warrant not based on stale information despite two-year delay between original seizures and warrant because more recent letters indicated that pornographic material was still being kept by the defendant); United States v. Lamb, 945 F.Supp. 441, 459 (N.D.N.Y. 1996) (holding warrant information not stale despite five-month lapse

between last transmission over Internet because"FBI Special Agent Lanning, an expert in this field, [stated] that collectors of child pornography rarely dispose of materials they obtain and`almost always maintain and possess their material ... in the privacy and security of their homes or some other secure location.'").

The defendant transmitted pornography on several separate occasions between 1994 and 1995. The last transmissions referred to in the affidavit supporting the warrant occurred on March 11, 1995. On that date, BIG MIKE 8 transmitted four files to the undercover agent. The four separate image files were "HARD011C.GIF" (3:45 AM), "HARD002C.GIF" (3:45 AM), "HARD003C.GIF" (3:45 AM), and "HARDOO1C.GIF" (3:46 AM). Contrary to the defendant's assertions, these do not form part of one transmission, although all occurred within minutes. These are four separate transmissions, accomplished in a brief time. On September 19, 1995, six months later approximately, the agents applied for a search warrant. These transmissions, following the pattern of transmission in 1994 and 1995, provided sufficiently fresh probable cause for the warrant issued in September 1995.

The defendant next argues that the search warrant described the places to be searched and things to be seized with insufficient particularity to withstand the requirements of the Fourth Amendment. The Fourth Amendment requires that a search warrant describe with particularity the place to be searched and the evidence to be seized. United States v. Owens, 848 F.2d 462, 463 (4th Cir. 1988). The particularity requirement is designed to prevent "a general, exploratory rummaging in a person's belongings." Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971); Andresen v. Maryland , 427 U.S. 463, 480 (1976). A warrant meets the particularity requirement "if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." Steele v. United States, 267 U.S. 498, 503 (1925). "[T]he test for the necessary particularity is a pragmatic one: `The degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved....[T]here is a practical margin of flexibility permitted by the constitutional requirement for particularity in the description of items to be seized.'" United States v. Torch, 609 F.2d 1088 (4th Cir. 1979), quoting United States v.

9

Davis, 542 F.2d 743, 745 (8th Cir. 1976). Unlike with murder weapons or drugs, when an offense concerns the use of hard copy or electronic files and documents a court cannot be sure which files will be relevant and the warrant may not be able to state as specifically what should be searched and seized. Therefore, courts have required less particularity in the warrant. United States v. Torch, 609 F.2d 1088, 1090 (4th Cir. 1979). Courts have acknowledged the need for the use of generic terms in warrants seeking evidence of child pornography and have upheld more generally-worded warrants so long as the warrant limits the discretion of the officers conducting the search. See Torch, supra, 609 F.2d at 1090 (holding sufficient a warrant for "records, documents and writings related to the transportation, sale and distribution in interstate commerce of lewd, lascivious and filthy films"); United States v. Layne, 43 F.3d 127, 132-33 (5th Cir. 1995) (upholding two warrants describing materials to be sought and seized as follows: "assorted pornographic videotapes; assorted pornographic magazines; assorted devices;" and, in the second warrant, "Child pornography; records of victims; drawings; pictures; computer disks, sexual devices; videotapes; child abuse books; magazines; audiotapes; and any other obscene or child pornographic material;" finding the warrants sufficiently limited officers' discretion in searching); United States v. Kimbrough, 69 F.3d 723, 727 (5th Cir. 1995) (finding sufficiently particular warrants' authorization for seizure of "`bills, correspondence, receipts, ledgers, Postal receipts and telephone records all of which show orders and deliveries to or from any known foreign or domestic distributer of child pornography'"); United States v. Hurt, 808 F.2d 707, 708 (9th Cir. 1987) (finding warrant authorizing search for material depicting individuals under sixteen years of age engaged in "sexually explicit conduct" to be sufficiently particular to limit officer's discretion); United States v. Jacobs, 513 F.2d 564, 567 (9th Cir. 1974) (finding sufficiently particular a warrant for "certain documents pertaining to the interstate shipment of obscene materials").

In the case sub judice, the warrant listed among the items to be seized any computers, tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, printers, modems, tape drives, disk application programs, data disks and graphic interchange format equipment which could be used to depict, distribute, possess or receive child pornography. This listing directed the FBI agents to search those items in the home with direct

10

connection to the alleged crime of the defendant: distribution and receipt of child pornography through the Internet by use of a computer. Courts have been clear that, in the case of child pornography, a warrant allowing seizure of a computer and all its associated printing, storage, and viewing devices is constitutional. The computer, applications, and various storage devices not only may contain evidence of distribution of child pornography, but are also the instrumentalities of the crime. See Davis v. Gracey, 111 F.3d 1472, 1480 (10th Cir. 1997) (upholding seizure of computer and all files contained therein because probable cause supported seizure of computer as an instrumentality of the crime of distribution of obscene materials); United States v. Kimbrough, supra, 69 F.3d at 727 (upholding warrant allowing seizure of "hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media-floppy disks, CD ROMs, tape systems and hard drive, other computer related operational equipment ... used to visually depict a minor engaging in sexually explicit conduct"); United States v. Lacy, supra, 119 F.2d at 745 (allowing seizure of entire computer system, hardware and software, because "the affidavit in this case established probable cause to believe Lacy's entire computer system was "likely to evidence criminal activity"). But see United States v. Kow , 58 F.3d 423, 426 (9th Cir. 1995) (holding warrant to be overbroad when allowing seizure of computers and computer files and storage devices because it failed to limit discretion in any way such as defining the criminal conduct at issue). The warrant in the case before us described the types of items to be seized and the crime for which the items were sought. The description contained in the search warrant limited the agents' discretion in the search by directing them to seize evidence of participation in the distribution of child pornography over the Internet. We find no error with the district court's determination that the warrant spelled out with sufficient particularity the items to be seized.

In addition to the particularity requirement, the search actually conducted under a warrant must be limited to the areas and evidence authorized by the warrant. Owens, supra, 848 F.2d at 463. Evidence seized in violation of the Fourth Amendment requirement that the search be limited to the confines of the warrant is subject to exclusion. Owens, supra, 848 F.2d at 463, citing Weeks v. United States, 232 U.S. 383, 398 (1914); Mapp v. Ohio, 367 U.S. 643, 655 (1961).

11

In the instant case, the district court appropriately found that the FBI agents remained within the limits of the warrant and that the search, therefore, was not in violation of the Fourth Amendment.

## The Sentence

The defendant also appeals his sentence, arguing that the district court applied the incorrect legal standard in denying a downward departure. At the sentencing hearing, Mr. Sassani claimed that he should receive a downward departure because he suffered from various mental disorders, including Tourette's Syndrome, Obsessive-Compulsive Disorder, a major depressive disorder, and numerous neuro-psychological deficits associated with Attention Deficit Disorder. These mental disorders, Mr. Sassani argued, caused him to possess child pornography. At the sentencing hearing, Judge Chasanow declined to depart downward because she concluded that the defendant did not suffer from significantly reduced mental capacity such as might force him to possess child pornography.

We review de novo the district court's interpretation of the legal standard to be applied to an application for a downward departure. United States v. Rybicki, 96 F.3d 754, 758 (4th Cir. 1996); United States v. Han, 74 F.3d 537, 549 (4th Cir. 1996). Unless this court finds that the district court erroneously believed that it did not have the discretion to depart downward, this court will not review the district court's discretionary refusal to depart downward from the applicable guideline range. United States v. Brock , 108 F.3d 31, 33 (4th Cir. 1997); United States v. Bayerle, 898 F.2d 28, 30-31 (4th Cir. 1990); 18 U.S.C.A. § 3742(a), (b) (West 1985 & Supp. 1996).**8**

Section 5K2.13 of the Sentencing Guidelines states that a downward departure from the Guideline sentencing range may be appropri-

_____

**8** Defendant suggests that the district court's determinations of fact, such as the merit of defendant's claim of reduced mental capacity, should be reviewed for clear error. While this would be true had the lower court determined that it should depart, see Rybicki, supra, 96 F.3d at 758, this court lacks jurisdiction to review a district court's denial of a departure despite the factual evidence presented by the defendant. Brock, supra, 108 F.3d at 33.

ate where "the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense." (U.S. Gov't Printing Office 1997). The courts have explored the impact of this policy statement on sentencing guideline departures in a series of cases. United States v. Glick, 946 F.2d 335 (4th Cir. 1990), explained that a court should determine first whether the defendant suffered from diminished mental capacity, and, second, whether such diminishment was a cause of the offense. The court stated, "Diminished capacity need not be the sole cause of the offense to justify a departure, but should `comprise[ ] a contributing factor in the commission of the offense.'" Id., quoting United States v. Ruklick, 919 F.2d 95, 97-98 (8th Cir. 1990). Unlike Glick, which focuses on the second prong of the test it announced, United States v. Goossens , 84 F.3d 697, 701 (4th Cir. 1996), focuses on the first prong -- the determination of diminished mental capacity itself. The court in Goossens requires that the defendant's mental capacity not simply be partially diminished, but that it be so diminished as to render the defendant incapable of processing information or reasoning. Goossens, supra, 84 F.3d at 701. United States v. Withers, 100 F.3d 1142 (4th Cir. 1996), revisits the second Glick factor and more closely links the two factors. Withers focuses on the causal relationship between the mental impairment and the criminal behavior and suggests that the contributing factor analysis announced in Glick requires more than simply a contribution insofar as leaving defendant "open to suggestion." Id. at 1147-48. Withers requires that the diminished mental capacity actively contribute to the behavior, such as by rendering the defendant incapable of reasoning. Id., citing Goossens, supra, 84 F.3d at 701. Thus, the Glick standard for a downward departure under Section 5K2.13 p.s., as explicated in Goossens and Withers, remains the law in this circuit.

Judge Chasanow stated that the legal standard for a downward departure under Section 5K2.13 of the Sentencing Guidelines is whether the defendant suffered from "significantly reduced mental capacity [that] bears a causal relationship to the crime." We now find that the district court applied the appropriate legal standard in this case. Because we so find, we do not reach the issue of whether the

13

district court properly found a downward departure unwarranted by the facts of this case, as such review is beyond our authority.

Conclusion

For the reasons stated above, the order of the district court is

AFFIRMED.

14